United States District Court      Southern District of Texas

| | | |
|---|---|---|
| Cassandra locks, | § | |
| | § | |
| Plaintiff, | § | |
| versus | § | Civil Action H-05-1739 |
| | § | |
| | § | |
| Memorial Hermann Hospital., | § | |
| | § | |
| Defendant. | § | |

# Opinion on Summary Judgment

1. *Introduction.*

A woman sues her former employer for discrimination and retaliation. The employer denies the allegations, and it has moved for summary judgment. The employer will prevail.

2. *Background.*

In January 2001, Cassandra Locks was hired at Memorial Hermann Hospital as a switchboard operator. Her responsibilities included answering and transferring telephone calls, communicating patient needs to hospital personnel, and maintaining a list of the hospital workers on call. Lock's shift required that she work alternate Saturdays and Sundays.

Locks was fired in July 2004. She then filed this lawsuit, claiming race discrimination and retaliation. She says that she was treated poorly because she was black, and she was fired for complaining about racism at the hospital. She also sued for assault and battery, negligent hiring, and negligent supervision – claims she has since abandoned.

To support her claims, Locks says that the hospital afforded other workers more flexibility with their schedules, while it forced her to work weekends and holidays. She also says that her supervisor gave a white worker – Lula Wilborn – better work assignments.

Although she did not mention it in her complaint, Locks now complains about

the hospital's creation of a new operator shift. She says that she wanted the position, but the hospital did not post the job before hiring someone else. She says this is proof of racism.

Finally, she recently added an allegation of forgery. Locks claims that her supervisor forged her name on a performance appraisal.

3.  *Locks's Response*.

Locks was represented by counsel for the first eight months of litigation. Her attorney moved to withdraw after Locks sent a letter directly to the court about privileged conversations with him. The court granted his motion. Lock's counsel attended three conferences with the court, and she represented herself in a fourth.

After the hospital moved for summary judgment, Locks "responded" on her own behalf. Specifically, she mailed the court a stack of papers with no explanation or application to the claims that she alleges. While this inadequate response defeats her case alone, the court will work through the case.

4.  *Application*.

To support her claim of race discrimination, Locks says: (a) the hospital would not give her weekends off, (b) she had to work holidays, (c) Wilborn treated her with disrespect and threw paper at her, and (d) she was fired. While the law recognizes only the firing as an actionable adverse employment action, there is no evidence that any of these events was racially motivated.

The record shows that Locks constantly complained about both her shift and her co-workers. She wanted weekends off, and she thought that her coworkers – especially Wilborn – were incompetent. The hospital says that a change in her shift would have required that it revise the entire switchboard schedule. It says that she was hired to work every other weekend and that she had no right to a change. The hospital is correct. Locks offers no evidence that a white employee with her schedule received weekend accommodations. Locks is not legally entitled to the schedule that she wants.

Locks also argues that the hospital hired a Hispanic male for a position that she wanted without notifying her – or anyone else – of the opening. The hospital says the

position was posted, and that Locks later told her supervisors that she actually wanted her schedule without the weekend work, not the new schedule. Regardless, Locks testified that she was no more qualified than the man hired. Again, there is no evidence of discrimination.

Locks undoubtedly thought that she was the best operator at the hospital. There is also no question that she thought – and told everyone who would listen – that Wilborn was unqualified for the job. The hospital says that supervisors met with Locks to listen to her concerns. It also required Wilborn to successfully complete a competency test. Again, even accepting Locks version of the facts, there is nothing to suggest that the hospital's decision to keep a poor worker was racially motivated. If she was not happy with her job because of administrative incompetence, her recourse was to quit, not to sue.

Locks also asserts a hostile work environment claim. To prevail on this claim, Locks would have to prove that the conditions in her department were so hostile that no reasonable person could work there. Instead, she relies on two incidents when she alleges that Wilborn threw paper at her and the persistent tension between the two. First, both women were disciplined for the paper-throwing altercation. Locks was not treated unfairly. Second, the evidence suggests that Locks created the tension of which she complains. Locks sent her supervisors dozens of letters and e-mails about how she should be treated and how the hospital should be run. In response, the hospital listened to her complaints and it often responded. Just because the responses were not what Locks wanted, does not make them either race-based or hostile.

Even if Locks had proven a prima facie case of discrimination or a hostile environment, her claim would fail because the hospital has raised a legitimate reason for the firing. In June 2004, after receiving numerous complaints, the hospital conducted an investigation of Lock's department. The human resources director – a black woman – led the investigation. The other operators – black, white, and Hispanic – uniformly stated that Locks used offensive language, threatened workers, and created tension. In response, the hospital fired Locks. She was replaced by a black female – yet another fact that defeats a presumption from her allegations.

Finally, Locks says that her supervisor forged her performance appraisal of 2003. She also testified that the evaluation was positive. Because she did not – and cannot –

assert any damages from the alleged forgery, this claim fails.  Also, the forgery is not connected to her race.

5.   *Conclusion.*

Locks has inadequately brought a baseless claim.  She will take nothing from the hospital.

Signed March 7, 2006, at Houston, Texas.

                                       Lynn N. Hughes
                                United States District Judge